**Dated: February 10, 2026.**

_____
**CHRISTOPHER G. BRADLEY
UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **In re:** § | | |
| **BLABLMBTQ, LLC,** § | | Case No. 25-10545-cgb |
| **Debtor.** § | | Chapter 11 |

## ORDER AND MEMORANDUM OPINION
## DENYING MOTION FOR ALLOWANCE AND
## PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM

### Introduction

In this case, a landlord asks for an administrative expense claim for the period between the petition date and the date the lease was rejected. The Court holds that the landlord is not entitled to an administrative expense claim because (1) no rent payments came due after the petition date and before move out; (2) the debtor was ready, willing, and able to move out of the leased premises the day before it filed bankruptcy but was locked out and unable to move its inventory; and (3) the debtor's postpetition use of the property was involuntary and unnecessary.

1

## Background

On April 18, 2025, BLABLMBTQ, LLC (the "Debtor") filed this chapter 11 case and also filed its *Motion to Reject Unexpired Lease of Real Property Nunc Pro Tunc* (the "Motion to Reject").[1] The Motion to Reject sought rejection of a lease regarding property located at 2150 Chisholm Trail in Round Rock, Texas (the "Leased Premises").[2] The Court held a hearing on the Motion to Reject and entered an order that provided that the lease would be rejected "effective on the date immediately following the date by which the Debtor removes all of the Debtor's personal property from the Leased Premises and has unequivocally surrendered possession of the Leased Premises to Landlord."[3] The Debtor moved out of the Leased Premises on April 28, 2025, thus the lease was rejected effective April 29, 2025.[4]

About five months later, the Debtor successfully obtained confirmation of its chapter 11 plan.[5] About two months after that, the Debtor's former landlord, Exeter 2150 Chisholm Trail, LP ("Exeter"), filed *Exeter 2150 Chisholm Trail LP's Motion for Allowance and Payment of Administrative Expense Claim* (the "Motion for Admin Claim," arguing that it should be allowed an administrative expense claim totaling $25,488.92 for rent accrued during the twelve days between the petition date and the date the Debtor rejected the lease.[6] The Debtor timely filed a response, arguing that the motion should be denied because Exeter had locked the Debtor out of the premises pre-petition and it had been unable to remove its personal possessions prior to filing bankruptcy.[7] The Court then set the Motion for Admin Claim for hearing.[8]

During the hearing, Daniel Davila, the property manager for the Leased Premises, and Katlyn Maupin, the Debtor's owner, testified.[9] Mr. Davila confirmed that the Debtor was locked out of the premises as of April 17, 2025 because of

---

[1] Pet., ECF No. 1; Mtn to Reject, ECF No. 6. The facts stated herein appear to be uncontested. Insofar as they are contested, the Court finds these facts to be true based on the record before it.
[2] Mtn to Reject, ECF No. 6; Exeter Ex. A (Proof of Claim referencing property address).
[3] Order Granting in Part and Denying in Part Mtn to Reject, ECF No. 27.
[4] Mtn for Admin. Claim., ECF No. 115.
[5] Order Confirming Plan, ECF No. 100.
[6] Mtn for Admin. Claim., ECF No. 115; Resp., ECF No. 116.
[7] Resp., ECF No. 116.
[8] Hr'g Notice, ECF No. 118.
[9] Audio of 12/16/25 Hr'g.

monetary defaults under the lease.[10] He further testified that he learned of the bankruptcy filing at the end of the day on Monday, April 21st.[11] Mr. Davila then texted Ms. Maupin to say that he had approval to let her back into the space and provided her the code to a lockbox with a key to the premises.[12] Per Mr. Davila's testimony, Ms. Maupin texted back that night and confirmed that she had access to the property.[13] Mr. Davila and Ms. Maupin coordinated a move out date, and the Debtor emptied the premises by the end of the day on April 28th.[14]

Ms. Maupin credibly testified that the Debtor was prepared to move out of the leased premises on April 17th and had scheduled a mover for 7:00 a.m. that day to relocate the Debtor's inventory to a new space, but that Mr. Davila refused to let them enter the Leased Premises.[15] On cross-examination, Mr. Davila admitted that he had been contacted by the Debtor's counsel about accessing the property before the petition was filed, and he had refused to grant access unless the Debtor paid $202,663.07.[16] Ms. Maupin testified that the Debtor then filed bankruptcy the next day after a failed attempt to negotiate a resolution with Exeter.[17]

Mr. Davila texted Ms. Maupin on the evening on April 21st to let her know that she could access the Leased Premises.[18] She credibly testified that moving out that night was not possible because there was a large amount of inventory and she needed to hire movers.[19] Due to availability, the movers were not able to start the move until the afternoon of Friday, April 25th, and did not complete the move until mid-day the next Monday, April 28th.[20] Ms. Maupin also testified that the Debtor could not conduct business during the time the inventory was locked in the Leased Premises because it would not be able to fulfill orders without access to the inventory.[21]

---

[10] Audio of 12/16/25 Hr'g.
[11] Audio of 12/16/25 Hr'g.
[12] Audio of 12/16/25 Hr'g.
[13] Audio of 12/16/25 Hr'g.
[14] Audio of 12/16/25 Hr'g.
[15] Audio of 12/16/25 Hr'g.
[16] Audio of 12/16/25 Hr'g; Debtor Ex. 3 (Email from Davila to Sather on April 17, 2025).
[17] Audio of 12/16/25 Hr'g.
[18] Audio of 12/16/25 Hr'g.
[19] Audio of 12/16/25 Hr'g.
[20] Audio of 12/16/25 Hr'g.
[21] Audio of 12/16/25 Hr'g.

## Analysis

When debtors file bankruptcy, the costs of administering and preserving the bankruptcy estate are typically treated as administrative expenses and paid before most other types of claims so that the debtors can either continue to operate or liquidate their assets for the benefit of their creditors. Specifically, section 503(b) provides that "there shall be allowed administrative expenses . . . including (1)(A) the actual, necessary costs and expenses of preserving the estate."[22] Section 507(a)(2) grants these administrative claims priority over almost all other types of claims.[23]

In addition, when a debtor is party to an unexpired leased of nonresidential real property on the petition date, section 365(d)(3) of the Bankruptcy Code offers protection to the debtor's landlord—who is often unwillingly thrust into the bankruptcy system—by providing that the debtor (or trustee) "shall timely perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title."[24]

### 1. Section 365(d)(3) does not apply to the Exeter's claim because the obligation to pay rent arose pre-petition and no new obligation arose post-petition.

Courts are split on how to apply section 365(d)(3)'s requirement that the debtor "timely perform all obligations" arising under the lease during a period of time after the petition is filed but before the decision to assume or reject has been taken.[25] As explained in its *Steepologie* opinion, this Court takes the view that under section 365(d)(3), a landlord with an unexpired lease of nonresidential real property has an *automatic* administrative claim for rent— "automatic" in the sense that there is no need to prove that the rent was an "actual or necessary" expense as required by section 503(b)(1).[26] Thus, if section 365(d)(3) were to apply to Exeter's claim in this case, Exeter would not need to meet the requirements of section 503(b)(1) to obtain an administrative expense claim.

---

[22] 11 U.S.C. § 503(b).
[23] 11 U.S.C. § 507(a)(2).
[24] 11 U.S.C. § 365(d)(3).
[25] *See In re Steepologie, LLC*, 673 B.R. 630, 635-39 (Bankr. W.D. Tex. 2024) (analyzing the three approaches courts have taken in applying section 365(d)(3)).
[26] *Id*. at 635.

But courts also disagree on *when* exactly a debtor's obligation to pay rent "arises," which causes disparate interpretations of section 365(d)(3)'s directive to pay rent that "arises from and after the order for relief."[27] In his *Simbaki* decision, Judge Isgur laid out the question in this way:

> Section § 365(d)(3) requires rent to be paid that "aris[es] *from and after* the order for relief." Traditionally, commercial leases require rent to be paid on the first of the month. Consider a scenario where the debtor's rent is due on January 1, but has not been paid. The debtor then files a voluntary petition on January 15.³ Can the landlord require the debtor to pay rent as an administrative expense for January 15–31 (commonly known as the stub rent period) under § 365(d)(3)?[28]

The main approaches to answering this question concerning the stub rent period are the "Proration Theory" and the "Billing Theory."[29] Under the Proration Theory, a debtor's obligation to pay rent "arises" daily and so the landlord is entitled to an administrative claim for each day of the debtor's use of the leased premises during the stub rent period on a daily basis.[30]

By contrast, under the "Billing Theory," the obligation arises at the time dictated by the lease.[31] Thus, if (as here) rent becomes due on the first of the month and the debtor files bankruptcy before the first of the next month, the landlord's claim for the stub rent period is not entitled to an automatic administrative claim under section 365(d)(3) because the obligation to pay rent during such period did not arise from or after the order for relief.

Although the Fifth Circuit has yet to weigh in on whether the Proration Theory or the Billing Theory should prevail, bankruptcy courts in the Fifth Circuit have generally applied the Billing Theory and found that rent owed for the stub rent period is not entitled to an administrative claim under section 365(d)(3) and that landlords

---

[27] 11 U.S.C. § 365(d)(3).
[28] *In re Simbaki, Ltd*, No. 13-36878, 2015 WL 1593888 at *4 (Bankr. S.D. Tex. Apr. 3, 2015).
[29] *In re Imperial Beverage Group, LLC*, 457 B.R. 490, 501 (Bankr. N.D. Tex 2011); *Simbaki*, 2015 WL 1593888 at *4-5.
[30] *Imperial*, 457 B.R. at 501 (citing *In re Stone Barn Manhattan, LLC*, 398 B.R. 359, 365 (Bankr. S.D. N.Y. 2008)).
[31] *Imperial*, 457 B.R. at 501; *Simbaki*, 2015 WL 1593888 at *5.

must instead seek allowance of stub rent claims under section 503(b)(1) (meaning they must show that the claim is for an "actual and necessary cost" of the estate).[32]

These courts reason that under the plain language of the statute, the debtor must pay obligations "arising from and after the order for relief *under any unexpired lease of nonresidential real property*."[33] In other words, the statute teaches that it is the lease that determines when the payment obligation arises. Thus, "[i]f the obligation to pay rent comes due under the terms of the lease before the order for relief, then under the billing theory it cannot be recovered under § 365(d)(3)."[34] This approach best squares with the statutory text and is not absurd. The Court will follow it. Thus, Exeter is not entitled to an automatic administrative claim under section 365(d)(3) and must instead seek allowance under section 503(b)(1).

### 2. Exeter's stub rent claim should not be awarded administrative status because the Debtor's post-petition use of its space was not necessary.

As discussed, to qualify as an administrative expense under section 503(b)(1), an "actual and necessary cost" must arise "post-petition and as a result of actions taken by the [debtor in possession] that benefitted the estate."[35] This expense fails that test. The Debtor was ready, willing, and able to vacate the premises pre-petition and was unable to do so, solely because of Exeter's refusal to allow entry. Exeter is not entitled to an administrative claim under section 503(b)(1).

### Conclusion

Thus, the Motion for Allowance of and Payment of Administrative Expense Claim should be denied because the Debtor's post-petition use of the Leased Premises would have been unnecessary if Exeter had not barred the Debtor from removing its personal property pre-petition.

---

[32] *See, e.g.*, *Imperial*, 457 B.R. at 501; *Simbaki*, 2015 WL 1593888 at *5. *See also In re Bella Logistics LLC*, 583 B.R. 674 (Bankr. W.D. Tex. 2018) (applying the "Billing Theory" approach when determining how a claim should be classified upon conversion of the case from chapter 11 to chapter 7); *In re TRP Brands LLC*, No. 24 B 1529, 2026 WL 190452 (Bankr. N.D. Ill. Jan. 23, 2026) (recent opinion applying the Billing Theory approach).
[33] 11 U.S.C. § 365(d)(3) (emphasis added); *Imperial*, 457 B.R. at 501; *Simbaki*, 2015 WL 1593888 at *5.
[34] *Imperial*, 457 B.R. at 501.
[35] *Nabers Offshore Corp. v. Whistler Energy II, LLC (In re Whistler Energy II, LLC)*, 931 F.3d 432, 441 (5th Cir. 2019) (quoting *Jack/Wade Drilling, Inc.*, 258 F.3d 385, 387 (5th Cir. 2001)).

      ACCORDINGLY, IT IS ORDERED that the Motion for Allowance of and Payment of Administrative Expense Claim is denied.

### #